# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LISA BREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-2576-DDC-GEB |
| | ) |
| FOUGERA PHARMACEUTICALS INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Leave to File her Second Amended Complaint (**ECF No. 55**). For the reasons set forth below, Plaintiff's motion is **GRANTED**.

## I. Background[1]

### A. Nature of the Case

Plaintiff, a Kansas resident, filed this employment action seeking damages for her wrongful termination by Defendants, who she contends acted as her joint employers during her one-year employment. Defendant Fougera Pharmaceuticals, Inc., ("Fougera") is a New York manufacturer of topical pharmaceutical products, and it claims to have been Plaintiff's sole employer, although it admits it is a subsidiary of defendant Sandoz,

---

[1] The information recited in this section is taken from the pleadings (Compl., ECF No. 1; First Am. Compl., ECF No. 23), and from the briefs regarding Plaintiff's Motion to Amend (ECF Nos. 55, 56, 59, 60). This background information should not be construed as judicial findings or factual determinations.

Inc. ("Sandoz") and that it hired Plaintiff as a District Manager in its PharmaDerm division to work remotely from Kansas. From her hiring in February 2015 until her termination in February 2016, Plaintiff was responsible for supervising pharmaceutical sales representatives in Kansas, Indiana, Nebraska, Missouri, Kentucky and parts of Illinois. Plaintiff contends the medical, dental, and prescription benefits through her employment were provided by defendant Novartis Pharmaceuticals Corporation.

Plaintiff believes problems with her employment began in the spring of 2015, when she began questioning the validity of certain expense reports and documents submitted by sales representatives under her direction. She reported the suspected falsifications to her Regional Director and the Human Resources department. But instead of taking action against the sales representatives involved in what Plaintiff perceived as fraud, she claims Defendants began retaliating against her.

Plaintiff asserts she was paid less than her male counterparts, and she was not allowed to hire a qualified female sale representative candidate but forced to hire a male with no relevant experience. In addition to her gender claims, she contends during a flight to a mandatory Managers' Meeting in December 2016, her inner eardrum ruptured. She sought medical treatment immediately, and the doctor recommended she not take a return flight home due to the uncertainty about additional damage to her ear from a subsequent flight. However, her boss—who was with her on the trip—told her to "suck it up," and she returned home by plane, which worsened her injury, resulting in permanent hearing loss and accompanying health issues.

Plaintiff reported her injury to Human Resources and pursued a workers' compensation claim. She also sought to discuss her disability and possible accommodations, including a possible permanent position in Kansas City so she would not be required to travel. She claims she was terminated soon after seeking this accommodation. Although Defendants claim her termination was based upon her inappropriate use of the company credit card, Plaintiff maintains personal use of the card was a common practice among employees. She contends she repaid all amounts, her similar credit card reports had previously been approved, and other employees charged personal expenses to their company cards without termination.

Defendants deny they were Plaintiff's joint employers and contend Fougera was her sole employer. Fougera claims it terminated Plaintiff after discovering she charged thousands of dollars in personal expenses to her corporate credit card in violation of company policy, a reason entirely unrelated to Plaintiff's gender or claimed disability. Additionally, prior to her ear injury, Plaintiff had expressed interest in a District Manager position in the Northwest District—which would require her to relocate to that part of the country. Fougera offered the Northwest District position to Plaintiff, and claims it paid her a $70,000 relocation payment on November 20, 2015. This relocation payment was contingent upon Plaintiff's relocation to the Northwest, which never occurred, and Fougera contends Plaintiff has not repaid the relocation funds as required.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 29, 2016 and received a Notice of Right to Sue on or about June 30, 2016. She filed this case on August 18, 2016, seeking damages

for gender discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII"); disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and for wrongful termination in violation of Kansas public policy for pursuing her workers' compensation claim and for reporting the fraudulent conduct of the sales representatives (ECF No. 1).

Both Fougera and Sandoz filed Counterclaims for breach of contract and unjust enrichment, based upon Plaintiff's failure to repay the relocation bonus, her failure to repay certain quarterly incentive payments, and her failure to reimburse Fougera for personal expenses charged to her corporate credit card (ECF No. 15).

After defendants Fougera and Sandoz filed their Counterclaims, Plaintiff filed another charge of discrimination with the EEOC, alleging retaliation by Defendants in violation of Title VII. Plaintiff received her Notice of Right to Sue on the retaliation claim on February 6, 2017.

### B. Procedural Posture

Plaintiff initially filed her lawsuit against four defendants: Fougera; Sandoz; PharmaDerm, LLC; and Novartis Pharmaceuticals, Inc. (ECF No. 1). Plaintiff later voluntarily dismissed PharmaDerm (ECF No. 13), and defendants Sandoz and Fougera filed their Answer and asserted Counterclaims (ECF No. 15). Plaintiff filed her First Amended Complaint (ECF No. 23) on October 31, 2016, which replaced former defendant Novartis Pharmaceuticals, Inc. with present defendant Novartis Pharmaceuticals Corporation ("Novartis"). On December 7, 2016, the Court entered a

Scheduling Order setting deadlines for mediation, fact discovery, and motion practice, and established a January 30, 2017 deadline for motions to amend the pleadings (ECF No. 35). All three defendants answered the Amended Complaint (ECF Nos. 37, 38), and the case progressed to active discovery. After the parties jointly requested extensions of the existing deadlines (ECF No. 57), the Court issued a Revised Scheduling Order (ECF No. 58). The parties recently requested a Second Revised Scheduling Order (Joint Motion, ECF No. 66; Order, ECF No. 67), which extended the fact discovery deadline to August 25, 2017, and the dispositive motion deadline to September 30, 2017.

Just before the first revision to the schedule, Plaintiff filed her Motion for Leave to File Second Amended Complaint (ECF No. 55), seeking to add her claim for retaliation, claiming Defendants filed their counterclaims against her in retaliation for her complaints of discrimination. All Defendants oppose the amendment (ECF No. 59), all related briefing is complete, and the issue of amendment is ripe for decision.

## II.    Motion to Amend (ECF No. 55)

### A.    Legal Standards

Fed. R. Civ. P. 15 establishes the standard for amending pleadings, while Rule 16 provides the general framework for pretrial management. Both rules are implicated by Plaintiff's motion, with Rule 15 providing the starting point.

#### 1.    Fed. R. Civ. P. 15

The standard for permitting a party to amend his or her complaint is well established. A party may amend its pleading as a matter of course under Fed. R. Civ. P.

15(a)(1), either before the responding party answers or within 21 days after service of a responsive pleading. However, in cases such as this, where the time to amend as a matter of course has passed, without the opposing party's consent a party may amend her pleading only by leave of the court under Rule 15(a)(2).

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[2] The court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.[3] In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."[4] The Tenth Circuit acknowledged that Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties,'"[5] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[6]

---

[2] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).

[3] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc.*, No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013) report and recommendation adopted, 2013 WL 328986 (D. Kan. Jan. 29, 2013).

[4] *Hinkle v. Mid-Continent Cas. Co.*, No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

[5] *Carefusion 213, LLC v. Professional Disposables, Inc.*, No. 09–2616–KHV–DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010) (citing *Minter,* 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir. 1982)).

[6] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).

## 2. Fed. R. Civ. P. 16

When a proposed amendment is offered after the deadline to amend pleadings has passed, as in this case, Fed. R. Civ. P. 16(b)(4) comes into play. This rule provides that a "schedule may be modified only for good cause and with the judge's consent." When considering a motion to amend the pleadings filed past the scheduling order deadline, "judges in this District have consistently applied a two-step analysis based on both Rule 16(b) and Rule 15(a)."[7] In such cases, the court "first determines whether the moving party has established good cause within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion."[8] Only after finding good cause has been shown will the court proceed to the second step and evaluate whether the broader Rule 15(a) standard for amendment has been satisfied.

"Good cause" under Rule 16(b)(4) requires the moving party to "show that the amendment deadline could not have been met even if it had acted with due diligence."[9] "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."[10] The party requesting an untimely amendment "is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline."[11] The district court has discretion to decide whether the movant has established good cause sufficient to modify the scheduling order deadlines, and such a decision is reviewed only

---

[7] *Carefusion 213*, 2010 WL 4004874, at *3 (citations omitted).
[8] *Id.*
[9] *Id.*
[10] *Livingston v. Sodexo & Affiliated Co.*, No. 11-4162-EFM-KGS, 2012 WL 2045292, at *1 (D. Kan. June 6, 2012) (citing *Deghand v. Wal–Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) (internal citations omitted)).
[11] *Id.*

7

for abuse of discretion.[12] With these standards in mind, the Court evaluates Plaintiff's motion.

### B. Discussion

Plaintiff's proposed Second Amended Complaint does not significantly differ from her previous pleading. She seeks only to amend her complaint to add a retaliation claim, because in addition to the retaliation she claims to have experienced during her employment, she asserts Defendants filed their counterclaims in retaliation for her complaints of discrimination. She claims she did not unjustly delay in seeking the amendment, and because depositions had not yet been held when she filed her motion, she argues Defendants will have adequate opportunity to examine her and conduct any discovery on the new retaliation claim. Defendants oppose the amendment because they believe the retaliation claim is futile. The arguments of the parties are addressed in turn.

#### 1. Good Cause

As an initial matter, although neither party addresses Rule 16's "good cause" standard, because Plaintiff's motion was filed after the Scheduling Order deadline, the Court briefly addresses the issue. Plaintiff did not receive her Notice of Right to Sue from the EEOC—a prerequisite to her retaliation claim[13]—until after the deadline to

---

[12] *Carefusion 213*, 2010 WL 4004874, at *3 (citations omitted).
[13] See *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 665 (D. Kan. 2014) (discussing "Federal courts lack jurisdiction to hear an employment discrimination suit based upon Title VII . . . when the party making the charge of discrimination fails to exhaust administrative remedies" by presenting a claim to the EEOC or authorized state agency and receiving a right-to-sue letter based on that charge) (citing *Richardson v. Rusty Eck Ford, Inc.,* No. 12–1313–KHV, 2013 WL

8

amend had passed. Therefore, even if Plaintiff had acted with due diligence, she could not have met the deadline.[14] Finding this to be a reasonable basis for her belated filing, and without opposition from Defendants, the Court finds Plaintiff demonstrates good cause under Rule 16.

### 2. Futility

Upon a finding of good cause under Rule 16, the Court must assess whether the standards for amendment under Rule 15(a)(2) have been satisfied. Of the factors analyzed by the Court when considering amendment, Defendants oppose Plaintiff's amendment only on the basis of futility.

As the party opposing amendment, Defendants bear the burden of establishing its futility.[15] "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[16] The proposed pleading is then analyzed using the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). When utilizing this standard, "the court must accept as true all well-pleaded factual allegations and view them in the light most favorable to the pleading party."[17] Only if the court finds "the proposed claims do

---

1704930, at *4 (D. Kan. Apr. 19, 2013); *Shikles v. Sprint/United Mgmt. Co.,* 426 F.3d 1304, 1317 (10th Cir. 2005)).

[14] *See id.*

[15] *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-2601-DDC-KGS, 2015 WL 1957782, at *2 (citing *Boykin v. CFS Enter., Inc.,* No. 08–2249–CM–GLR, 2008 WL 4534400, at *1 (D. Kan. Oct. 6, 2008)).

[16] *Farmers Bank & Trust, N.A. v. Witthuhn*, No. 11-2011-JAR, 2011 WL 5920941, at *2 (D. Kan. Nov. 28, 2011) (citing *Jefferson Cnty. Sch. Dist. No. R–1 v. Moody's Investors's Servs., Inc.,* 175 F.3d 848, 859 (10th Cir. 1999)); *see also Neonatal Prod. Grp.*, 2015 WL 1957782, at *2 (internal citations omitted).

[17] *Carefusion 213*, 2010 WL 4004874, at *5 (citing *Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir. 2007) (internal citations omitted)).

not contain enough facts to state a claim for relief that are plausible on their face or the claims otherwise fail as a matter of law"[18] should the court find the amendment futile.

Defendants argue the amendment is futile if the complaint, as amended, would be subject to dismissal for *any* reason, including if the amendment would fail on summary judgment. They contend Plaintiff's proposed retaliation claim would not survive a motion for summary judgment because their counterclaims have a strong non-retaliatory basis in both fact and law. Defendants maintain Plaintiff admitted to the facts that support the non-retaliatory basis for their counterclaims, and attach exhibits to their opposition brief to support their factual contentions. And, because the counterclaims arise out of the same events which led to Plaintiff's lawsuit, the counterclaims are compulsory, and Defendants had no choice but to file them or risk waiving those claims.

To support their belief that a review of the proposed amendment with a summary judgment standard is appropriate, Defendants cite two Tenth Circuit cases, which this Court finds distinguishable. First, in the 2001 case of *Watson v. Beckel*,[19] the appellate court applied a summary judgment standard to its review of the denial of leave to amend, but the district court had already granted summary judgment on one claim in the case and was reviewing both the summary judgment ruling and the amendment issue together.[20] Essentially, the uncontroverted facts of the case—already developed in the record—led to

---

[18] *Id*. (citing *Raytheon Aircraft Co. v. U.S.,* 501 F. Supp. 2d 1323, 1327 (D. Kan. 2007); *see also Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).
[19] *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001).
[20] *Id.* at 1243-44.

summary judgment on plaintiff's initial due process claim, which led the district and appellate courts to conclude an amendment to add an equal protection claim would fail as a matter of law.[21]

In *Bauchman for Bauchman v. W. High Sch.*,[22] a 1997 case, the district court dismissed plaintiff's original complaint for constitutional violations on the pleadings for numerous reasons, and dismissed her claims for declaratory and injunctive relief as moot. In an attempt to salvage her case, plaintiff sought to amend her complaint to include a new theory of defendant's unconstitutional conduct. The district court deferred ruling on the motion to amend until the parties had the opportunity to conduct discovery on the new theory, and considered the parties' post-discovery evidence when denying the motion to amend.[23] Although the plaintiff argued the court improperly applied a summary judgment standard to her motion to amend, the appellate court found her argument disingenuous, since she participated in the permitted discovery and herself presented supporting materials for the court's consideration, and upheld the district court's denial of the amendment.[24]

Not only are these cases distinguishable, but Courts in this district have generally confined their futility analysis to a Rule 12(b)(6) analysis—as opposed to a Rule 56 summary judgment analysis—and refused to examine evidence or affidavits, outside the pleadings, when determining futility of amendment. For example, in *Szczygiel v.*

---

[21] *Id*. at 1244.
[22] *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542 (10th Cir. 1997)
[23] *Id*. at 558.
[24] *Id*. at 562.

*Kansas*,[25] the court acknowledged the potential strength of the defendant's argument, under a summary judgment standard, but clearly distinguished its analysis on the motion to amend from a later summary judgment standard. Likewise, in *Walker v. Axalta Coating Sys., LLC*,[26] the court found the proposed amendment not clearly frivolous, and noted defendants were not "precluded from reasserting their arguments in a motion under Rule 12(b)(6) or Rule 56."[27]

Here, the parties certainly disagree on the interpretation of the limited facts currently before the Court. Defendants contend Plaintiff admitted to both signing the agreement requiring her to repay the relocation payment, and violating the company's corporate credit card policy, and provide documentary evidence to support their claims as exhibits to their response brief. Plaintiff presented only the proposed amended complaint, and although Defendants included other exhibits, as stated, the Court generally disregards those exhibits when applying the Rule 12(b)(6) plausibility standard to the potential amendment.

Even if the Court were inclined to consider the information presented by Defendants, Defendants do not contend Plaintiff's Second Amended Complaint is not *well-pleaded*; rather, they ask the Court to apply a summary judgment standard to facts and a record which are not currently developed. Discovery is not complete, and at the time of filing the motion, depositions had not yet begun. The parties interpret the

---

[25] *Szczygiel v. Kansas*, No. 14-CV-3011-EFM, 2015 WL 630570, at *3, n. 23.
[26] *Walker v. Axalta Coating Sys., LLC,* No. 14-2105-JAR, 2015 WL 685834, at *3 (D. Kan. Feb. 18, 2015) (finding the issue of punitive damages more appropriately addressed at a later stage in the case by the presiding U.S. District Judge).
[27] *Id*. at *3.

currently-available facts very differently, and this Court simply does not have adequate information before it by which to definitively conclude Plaintiff's retaliation claim could not survive summary judgment—especially because the Court is required to examine the factual record and all reasonable inferences therefrom in the light most favorable to Plaintiff.[28] The issue in resolving a Rule 12(b)(6) motion to dismiss, or the futility of a proposed amendment, is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[29]

Exercising its discretion, and recognizing Defendants will have an opportunity to challenge the sufficiency of the retaliation claim through a later dispositive motion,[30] the Court will not deny Plaintiff's proposed amendment on the basis of futility. Permitting the filing of the proposed amendment "comports with the liberal amendment policy of Fed. R. Civ. P. 15(a)"[31] where Defendants may later challenge the claim and particularly in light of the lack of prejudice to Defendants discussed below.

### 3. Other Factors

Although the parties confront the issue of futility in their briefs, the other factors weighed by the Court, such as prejudice to the non-moving party and timeliness of

---

[28] *See Carefusion 213*, 2010 WL 4004874, at *5 (citing *Anderson v. Suiters,* 499 F.3d 1228, 1238 (10th Cir. 2007) (internal citations omitted) (discussing the standard for review of a Rule 12(b)(6) motion to dismiss); *see also Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988) (discussing the review of pleadings and evidence at summary judgment).

[29] *Carefusion 213*, 2010 WL 4004874, at *5.

[30] *See, e.g., Carefusion 213*, 2010 WL 4004874, at *6 (finding "Defendants' arguments are better suited for resolution on a motion for summary judgment"); *see also Quality Time, Inc. v. W. Bend Mut. Ins. Co.*, 12-1008-JTM-GLR, 2012 WL 2872226, at *2 (D. Kan. July 12, 2012) (citing *Tommey v. Computer Sciences Corp.,* No. 11–2214–EFM, 2012 WL 646022, at *2 (D. Kan. Feb. 28, 2012).

[31] *Quality Time, Inc.*, 2012 WL 2872226, at *2.

amendment, were not so thoroughly addressed. Defendants expend their efforts arguing futility, but ignore Plaintiff's contentions that her request is timely and Defendants would suffer no prejudice by allowing her to amend her pleading. Despite the lack of attention to each, the Court briefly considers each topic.

Most importantly, Defendants fail to present any argument regarding the prejudice they might face if the amendment were permitted. As the party opposing the amendment, Defendants bear the burden to demonstrate undue prejudice within the meaning of Rule 15.[32] Under Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant."[33] While any amendment invariably causes some "practical prejudice," undue prejudice means that the amendment "would work an injustice to the defendants."[34]

Given Defendants' complete disregard of this "most important factor,"[35] the Court finds Defendants wholly failed to demonstrate prejudice sufficient to prohibit the proposed amendment. And, considering the nature of the new claim and the procedural posture of the litigation, the Court struggles to discern any true injustice which would occur from adding the retaliation claim. The majority of facts supporting the retaliation claim arise from the same occurrences as Plaintiff's other claims, and much of the

---

[32] *Carefusion 213*, 2010 WL 4004874, at *4 (internal citations omitted).
[33] *Id*. (citing *U.S. v. Sturdevant,* No. 07–2233–KHV–DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (citing *Minter*, 451 F.3d at 1208; *Jones v. Wildgen,* 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004))).
[34] *Id*. (citing *Sturdevant*, 2008 WL 4198598, at *3; other internal citations omitted).
[35] *Minter*, 451 F.3d at 1207 (noting, "The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party.")

discovery is likely to have already occurred. At the time of Plaintiff's motion, discovery was ongoing and the parties had not yet scheduled depositions (although depositions have since been conducted).[36] The parties recently received an extension of their fact discovery deadline to August 25, 2017 (see Joint Motion, ECF No. 66, and Order, ECF No. 67), which will provide the parties with adequate time to conduct any additional discovery and Defendants with sufficient opportunity to fully defend the new claim.

Additionally, the Court does not find the timeliness of the amendment rises to such an offensive level as to prohibit its filing. The timeliness of amendment was examined above in the context of good cause, and the Court does not repeat that analysis here. Likewise, as noted in the paragraph above, the current procedural posture of the case weighs in Plaintiff's favor. Defendants did not raise the issue of timeliness, and for all of these reasons, the Court finds the amendment timely, despite Plaintiff's belated request.

### C. Conclusion

Equally applicable to all of Defendants' futility arguments is a singular concern: their arguments apply a heightened standard to the amended pleading. But the evidentiary record of this case is undeveloped, the facts are controverted, and this case is not before the Court on a dispositive motion. Applying the standards for consideration of amendment under Rule 15, and accepting all Plaintiff's factual allegations as true, the Court cannot deny the amendment based upon Defendants' futility contentions. Apparent

---

[36] The parties' recent Joint Motion reveals the parties have since conducted multiple depositions, but believe they need to conduct at least one more deposition and exchange certain documents relating to issues which arose during deposition. (ECF No. 66, ¶¶ 7, 9.)

factual disputes exist, and at this stage of proceedings, the amended pleading "raise[s] a reasonable expectation that discovery"[37] will further clarify the issues. Applying a pleading standard, rather than the more stringent standard suggested by Defendants, the Court cannot, at this juncture, definitively find Plaintiff's proposed amendment is futile.

Additionally, Defendants failed to demonstrate any amount of prejudice which may occur as a result of the amendment. Therefore, finding Plaintiff's proposed amendment not clearly futile, and would cause no undue prejudice, the Court prefers this case to proceed on its full merits.[38] In the interests of justice, the Court will allow Plaintiff to amend her Complaint.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend the Complaint (**ECF. 55**) is **GRANTED**. Plaintiff shall file her Second Amended Complaint on or before **August 8, 2017**. As requested by Plaintiff, and supported by ample authority[39], the filing date of the Second Amended Complaint is deemed the date of filing of her motion to amend: May 1, 2017. Defendants must answer the Second Amended Complaint **within 14 days** of its filing. The parties are strongly cautioned future

---

[37] *Twombly*, 550 U.S. at 556.
[38] *See Hinkle*, 2012 WL 2581000, at *1 (citing *Koch*, 127 F.R.D. at 209).
[39] Plaintiff seeks this specific filing date in order to have filed her retaliation claim within the 90 days required by her Notice of Right to Sue from the EEOC. *See Kwang I. Lee v. City of Leawood, Kansas*, No. 08-2242-KHV, 2009 WL 2106104, at *3 (D. Kan. July 16, 2009) (noting "an amended complaint is deemed filed on the date plaintiff seeks leave to amend") (citing *Wallace v. Sherwin Williams Co., Inc.,* 720 F. Supp. 158, 159 (D. Kan. 1988); *Farm Credit Bank of Wichita v. FCB Ltd. P'ship,* 825 F. Supp. 932, 935 (D. Kan. 1993) (for purposes of statute of limitations, amended complaint that adds new parties to diversity action deemed filed on date motion to amend filed, not date that plaintiff actually files complaint after receiving leave of court); *Ramirez v. City of Wichita, Kan.*, No. 92–1437, 1994 WL 114295, at *2 (D. Kan. March 24, 1994)).

amendments, although not outright prohibited, will be met with considerable scrutiny[40] given the previous opportunities to articulate the parties' claims.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 1st day of August, 2017.

     s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge

---

[40] *See Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Castleglen, Inc. v. Resolution Trust Corp.,* 984 F.2d 1571, 1585 (10th Cir.1993); *Foman,* 371 U.S. at 182) (noting "failure to cure deficiencies by amendments previously allowed" is one reason the court may use to deny leave to amend).